**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AYANNA CROMWELL,** <br> *Plaintiff,* <br><br>          **v.** <br><br> **SOUTHEASTERN PENNSYLVANIA** <br> **TRANSPORTATION AUTHORITY,** <br> *Defendant.* | **CIVIL ACTION** <br> **NO. 24-1884** |

**Baylson, J.**                                                                                                  **April 15, 2025**

<u>**MEMORANDUM RE: SUMMARY JUDGMENT AND LEAVE TO AMEND**</u>

Plaintiff Ayanna Cromwell ("Cromwell"), a former train operator, alleges gender discrimination, a hostile work environment, and retaliation by her former employer, Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"). For the reasons stated below, SEPTA's Motion for Summary Judgment is **GRANTED in part and DENIED in part** and Cromwell's Motion for Leave is **GRANTED**.

I.       <u>FACTUAL ALLEGATIONS</u>

A.       **Background**

Considering the undisputed facts and the disputed facts in the light most favorable to the non-movant, the events giving rise to this case are as follows. Cromwell began working for SEPTA in March 2006 and became a Subway Elevated ("Sub-El") train operator in May 2016. Def. Statement of Undisputed Material Facts ¶ 1, ECF 20-3 ("SUMF"); Plf. Resp. to Def. Statement of Undisputed Material Facts ¶ 1, ECF 25-2 ("RSUMF"). Cromwell was incarcerated from September 2020 to August 2021, and upon returning to work, resumed work as a Sub-El Operator. SUMF ¶¶ 2–3; RSUMF ¶ 2.[1] Cromwell reported to two Assistant Directors, who reported to

---

[1] The charges against Cromwell were dismissed in February 2023. RSUMF ¶ 2.

Jarawa Jones, who reported to Mike Lyles.  SUMF ¶ 3; RSUMF ¶ 3; Plf. Counter Statement of

Undisputed Material Facts ¶¶ 6–7, ECF 25-1 ("CSUMF"); Def. Resp. to Counter Statement of

Undisputed Material Facts ¶¶ 6–7, ECF 27-1 ("RCSUMF").  Jones, who reported to Lyles,

supervised Cromwell beginning in September 2021.  CSUMF ¶¶ 7–9; RCSUMF ¶¶ 7–9.

Under Cromwell's union Collective Bargaining Agreement ("CBA"), discipline begins at

verbal warning, and progresses to written warnings, suspensions, and discharge; steps may be

skipped for depending on the severity of a violation.  SUMF ¶¶ 8–9; RSUMF ¶¶ 8–9.  The CBA

also provides a grievance process for when an employee disputes the proposed discipline, which

includes filing a Notice of Investigation, an Informal Hearing, a Formal Hearing, a Labor Relations

Step Hearing, and an arbitration.  SUMF ¶ 10; RSUMF ¶ 10.

### B.    Incidents

In late 2021, Jones approached Cromwell and asked if she wanted to go to a casino for his

birthday.  CSUMF ¶ 10; RCSUMF ¶ 10.  She declined.  CSUMF ¶ 10; RCSUMF ¶ 10.  Jones

grabbed her face and said, "If you need anything, you know, just let me know."  CSUMF ¶ 11;

RCSUMF ¶ 11.

In January 2022, Cromwell was having problems with her coworkers that required she meet

with Jones privately in his office.  In these meetings, Jones complimented Cromwell's appearance,

telling her on over ten occasions that she looked "good" and was "getting thick."  CSUMF ¶¶ 10,

13; RCSUMF ¶¶ 10, 13.  Jones would put his arm around Cromwell's waist to pull her closer and

she would remove his hand and tell him to "chill out."  CSUMF ¶ 14; RCSUMF ¶ 14.  At the end

of these meetings, Jones would press himself against Cromwell's body as she was leaving his

office such that she felt his genitals against her.  CSUMF ¶ 15; RCSUMF ¶ 15.

In early 2022, Jones began riding Cromwell's train three to four times per week. CSUMF ¶ 16; RCSUMF ¶ 14. Jones continued to compliment Cromwell's physicality, comment about her weight, and ask her out on dates. CSUMF ¶ 17; RCSUMF ¶ 17.

On August 18, 2022, Cromwell was given an award and was photographed with Jones. CSUMF ¶ 19; RCSUMF ¶ 19. Between photographs, Jones said, "don't we look nice together" and grabbed Cromwell's rear. CSUMF ¶ 19; RCSUMF ¶ 19. At another point, Cromwell and her coworker went to Jones' office to discuss becoming mentors to new train operators and he told them he had expectations from his operators and asked to meet with Cromwell alone. CSUMF ¶ 20; RCSUMF ¶ 20.

On January 25, 2023, Jones was seated in the train car behind Cromwell on a train she was operating. SUMF ¶ 12; RSUMF ¶ 12. Cromwell advised that there was a spill on the floor of her car and sought to isolate (i.e., lock) the car, and Jones told Cromwell not to. CSUMF ¶ 22; RCSUMF ¶ 22. Cromwell notified the dispatcher of the spill and was told to isolate the car, which she did. CSUMF ¶ 22; RCSUMF ¶ 22. Jones disagreed with this decision. SUMF ¶ 13; RSUMF ¶ 13. At the next station, Jones asked Cromwell she was "happy now" and "got what [she] wanted." CSUMF ¶ 22; RCSUMF ¶ 22. Cromwell submitted an incident report (which did not refer to words "gender" or "sexual") stating that Jones was harassing her. SUMF ¶¶ 14–15; RSUMF ¶¶ 14–15; CSUMF ¶ 23; RCSUMF ¶ 23.

On July 12, 2023, Jones was riding a train that Cromwell was operating and noticed that the destination sign in his train car was incorrect. SUMF ¶ 16; RSUMF ¶ 16. Jones banged on Cromwell's door, told her the automatic announcements were not playing, and instructed her to reset the sign. SUMF ¶ 17; RSUMF ¶ 17; CSUMF ¶ 24; RCSUMF ¶ 24. Cromwell said she did not know the announcements were broken because they were playing in her car. CSUMF ¶ 24;

RCSUMF ¶ 24.  Jones responded, "We don't have to keep going through this if you just let me take you out."  CSUMF ¶ 24; RCSUMF ¶ 24.   Cromwell slammed the door and reported the announcement and sign issues to a mechanic.  CSUMF ¶ 24; RCSUMF ¶ 24.   Jones issued a Charge Sheet charging Cromwell with violations for failing to display destinations and make automatic announcements and recommending a written warning.  SUMF ¶¶ 19–20; RSUMF ¶¶ 19–20; CSUMF ¶ 25; RCSUMF ¶ 25.

On July 18, 2023, Cromwell was arriving at 69th Street for a Formal Hearing.  CSUMF ¶ 30; RCSUMF ¶ 30.   Jones passed Cromwell in the main terminal, told her "Hey sexy, I still want you," and tried to grab her wrist.  CSUMF ¶ 30; RCSUMF ¶ 30.

On August 23, 2023, Lyles asked Cromwell why she and Jones did not get along and she told Lyles, "the issue is that [Jones is] trying to fuck me.  And I'm not going for it."  SUMF ¶ 22; RSUMF ¶ 22; CSUMF ¶ 32; RCSUMF ¶ 32.  Cromwell saw Lyles in the break room again later that day and told him that she was "tired of [Jones] harassing [her] and always giving [her] pushback . . . ."  SUMF ¶¶ 22–23; RSUMF ¶¶ 22–23.  Cromwell asked Lyles to "talk to [Jones] or something" because she "just want[ed] it to stop."  CSUMF ¶ 33; RCSUMF ¶ 33.  Cromwell's report to Lyles—the next level of management after Jones—complied with the reporting procedure under SEPTA's Harassment Prevention and Retaliation Policy, but Lyles did not act after the report.  CSUMF ¶¶ 35–37; RCSUMF ¶¶ 35–37.

On September 14, 2023,[2] Jones held an Informal Hearing related to Cromwell's written warning.  SUMF ¶ 25; RSUMF ¶ 25.  Cromwell grieved the written warning, and this proceeded to a Formal Hearing.  SUMF ¶ 25; RSUMF ¶ 25.  Before the Formal Hearing related to Cromwell's

---

[2] That same day, Cromwell was attending a Local Safety Committee meeting that Jones attended, at which he asked her if she was "still playing hard to get" and during which he blew kisses at Cromwell.  CSUMF ¶ 31; RCSUMF ¶ 31.

written warning, Jones added additional charges against Cromwell for violation of rules related to personal conduct, tampering, conduct to the public, and safety.  SUMF ¶ 28; RSUMF ¶ 28; CSUMF ¶ 46; RCSUMF ¶ 46.  Further, Jones changed the recommended discipline to discharge.  SUMF ¶ 28; RSUMF ¶ 28.  On September 27, 2023, a Formal Hearing was held before Senior Director Richard Diamond.  SUMF ¶ 30; RSUMF ¶ 30.  Diamond afforded the Union the opportunity to request a postponement to address the new charges. SUMF ¶¶ 30–31; RSUMF ¶¶ 30–31.  Cromwell testified that she had complained to Lyles that Jones was "trying to fuck [her]."  SUMF ¶ 32; RSUMF ¶ 32.  On October 2, 2023, Diamond denied the grievance and noted that a new Notice of Investigation should be issued on the additional charges and proposed increased discipline.  SUMF ¶ 33; RSUMF ¶ 33.[3]

On October 5, 2023, Cromwell filed a complaint with SEPTA's Equal Employment Opportunity ("EEO") Office about Jones' conduct.  SUMF ¶ 35; RSUMF ¶ 35.  EEO Manager Anthony Miller identified witnesses and conducted EEO interviews.  SUMF ¶ 35; RSUMF ¶ 35. Interviewees noted that Cromwell had mentioned inappropriate interactions with Jones to them and that some of them had themselves had inappropriate interactions with Jones.  CSUMF ¶¶ 60, 62; RCSUMF ¶¶ 60, 62.  SEPTA concluded that it could not substantiate Cromwell's complaints against Jones.  CSUMF ¶ 69; RCSUMF ¶ 69.

On October 31, 2023, Sharron Mapp issued a Charge Sheet for the additional charges with a new grievance number.[4]  SUMF ¶ 34; RSUMF ¶ 34.  On November 17, 2023, a Formal Hearing related to Cromwell's recommended discharge was held before Diamond.  SUMF ¶ 36; RSUMF ¶

---

[3] Cromwell grieved the written warning, but the grievance was denied and the written warning was upheld.  SUMF ¶ 33; RSUMF ¶ 33.

[4] That same day, Mapp charged Cromwell with tampering for isolating a train car and recommended a one-day suspension.  SUMF ¶ 34; RSUMF ¶ 34.

36. Mapp presented SEPTA's case. SUMF ¶ 36; RSUMF ¶ 36. Diamond denied the grievance and upheld Cromwell's discharge. SUMF ¶ 37; RSUMF ¶ 37; Ex. S, ECF 20-22. Cromwell appealed this decision. SUMF ¶ 39; RSUMF ¶ 39. The Labor Relations Step hearing was held on November 30, 2023, before Labor Relations Manager Bud Scott and SEPTA's case was presented by Mapp. SUMF ¶ 40; RSUMF ¶ 40. Scott denied the grievance and upheld Cromwell's discharge. SUMF ¶ 41; RSUMF ¶ 41; Ex. T, ECF 20-23. Cromwell appealed to arbitration and the arbitration panel upheld her discharge. SUMF ¶¶ 42, 44; RSUMF ¶¶ 42, 44.

On February 12, 2024, Cromwell filed a Charge with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission. SUMF ¶ 43; RSUMF ¶ 43.

## II.    PROCEDURAL HISTORY

On May 3, 2024, Cromwell filed this case bringing claims for hostile work environment, gender discrimination, and retaliation under Title VII. ECF 1. On July 22, 2024, SEPTA filed its answer. ECF 9. Fact discovery closed on February 13, 2025. ECF 17. On March 10, 2025, SEPTA filed a Motion for Summary Judgment. On March 24, 2025, Cromwell filed her opposition. On March 27, 2025, Cromwell filed a motion to amend her complaint. ECF 27. On March 31, 2025, SEPTA filed a reply in support of its Motion. ECF 28.

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

6

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The Court must view the evidence in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

IV.    **DISCUSSION**

A.    **SEPTA's Motion for Summary Judgment**

After reviewing the parties' briefs and the record, this Court holds that there are genuine disputes of material fact that preclude summary judgment on Cromwell's claims.

1.    **Gender Discrimination Claim**

Title VII discrimination claims require that a plaintiff demonstrate that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) under circumstances that give rise to an inference of unlawful sex-based discrimination. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). There is no dispute that Cromwell suffered an adverse employment action through her termination, and the parties dispute whether the write-ups and escalation were adverse employment actions. Moreover, Cromwell has demonstrated that she is a member of a

protected class.   Cromwell has produced evidence that the circumstances surrounding her termination permit an inference of discrimination, including but not limited to:

- That Cromwell experienced and reported harassment to Lyles, SUMF ¶¶ 22–23; RSUMF ¶¶ 22–23; CSUMF ¶¶ 32–33, 35–37; RCSUMF ¶¶ 32–33, 35–37;

- That when Cromwell stated she did not know the announcements were broken, Jones responded to her, "We don't have to keep going through this if you just let me take you out."  CSUMF ¶ 24; RCSUMF ¶ 24;

- That Jones complimented Cromwell's appearance, telling her on over ten occasions that she looked "good" and was "getting thick," CSUMF ¶¶ 10, 13, 17; RCSUMF ¶¶ 10, 13, 17;

- That Jones physically touched Cromwell despite her requests for him to "chill out" and removal of his hands, CSUMF ¶ 14; RCSUMF ¶ 14, and had would press himself against Cromwell's body as she was leaving his office such that she felt his genitals against her, CSUMF ¶ 15; RCSUMF ¶ 15, or, on one occasion, grabbed Cromwell's rear, CSUMF ¶ 19; RCSUMF ¶ 19.

These allegations, among others, create genuine issues of material fact as to whether Cromwell was discriminated against because of her gender and whether SEPTA's proffered reasons for her termination and the escalation of her discipline related to isolating a train car without authorization and issues regarding signage and announcement were pretextual, precluding summary judgment.

While the Formal Hearing officer and arbitration panel discussed that isolating a train car without authorization was potentially an issue, there is record evidence which calls into question Jones' motivation for writing up Cromwell and recommending her termination.  For example, Yarde testified that isolating a train car without authorization is not tampering under the Rules

because it does not involve a safety device, Yarde Dep. 9:18–10:10, ECF 25-18, thus establishing a genuine dispute of material fact related to SEPTA's proffered reasons for Cromwell's termination and the escalation of her discipline.  Further, Jones testified that Cromwell "was written up for her response" to Jones, Jones Dep. 31:8–22, ECF 20-8, after he allegedly told Cromwell, "We don't have to keep going through this if you just let me take you out."  CSUMF ¶ 24; RCSUMF ¶ 24. This too supports a genuine dispute as to SEPTA's proffered reasons for Cromwell's discipline and Jones' motivation for writing up Cromwell.

### 2.    Hostile Work Environment Claim

As a preliminary matter, Cromwell's hostile work environment claim is timely under the continuing violations doctrine.  A plaintiff bringing a Title VII claim in Pennsylvania "must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)).    But, under the continuing violation doctrine, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim," id. at 165, if the acts are linked in a pattern that continues into the applicable limitations period, O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006); see Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Cromwell's hostile work environment claim is not time-barred.  Cromwell has alleged at least one act that falls within the statute of limitations,[5] and

---

[5] For example, allegations that occurred during the statute of limitations period included the July 12, 2023, incident during which Cromwell was operating a train where automatic announcements were not playing and the designation sign was incorrect where Jones said to her Jones responded, "We don't have to keep going through this if you just let me take you out." CSUMF ¶ 24; RCSUMF ¶ 24.  Also within that period are the allegations that on July 18, 2023, Jones passed Cromwell in the main terminal of 69th Street Station and told her "Hey sexy, I still want you," and tried to grab her wrist, CSUMF ¶ 30; RCSUMF ¶ 30, and the September 14, 2023, allegations that while Cromwell was attending a Local Safety Committee meeting, Jones asked her if she was "still playing hard to get" and he blew kisses at her, CSUMF ¶ 31; RCSUMF ¶ 31.

multiple of the acts that occurred before the limitations period that involved similar conduct by Jones, suggesting a persistent ongoing pattern.  See Mandel, 706 F.3d at 167.

"To establish a hostile work environment claim against an employer, a plaintiff must prove the following: (1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).  Whether conduct constitutes a hostile work environment depends on an evaluation of "all the circumstances . . . ." Burgess v. Dollar Tree Stores, Inc., 642 F. App'x 152, 155 (3d Cir. 2016) (non-precedential) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)).  Here, too, there are genuine issues of material fact that foreclose summary judgment on the hostile work environment claim.

Cromwell's testimony about, among other things, Jones complimenting her body and how she looked in her uniform, Cromwell Dep. 82:6–84:16, ECF 25-3; Yarde Int. ¶¶ 5–6, ECF 25-6, pushing his penis against her back, id. 84:6–16, and touching her rear, id. 96:24–98:5, presents sufficient evidence that could permit a reasonable jury to find that Jones' harassment occurred because of Cromwell's sex.  See Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 214 (3d Cir. 2017) (finding that testimony about sexual actions and comments about plaintiff's body by supervisor supported claim that harassment occurred because of plaintiff's sex).   SEPTA's claim that Cromwell's allegations lack a connection to her sex fails.  Mot. at 15, ECF 20.

Further, Jones' conduct, if proven, could be viewed by a reasonable juror as sufficiently severe or pervasive to support a hostile work environment claim based on all the circumstances. Cromwell testified that Jones repeatedly asked her out on dates, Cromwell Dep. 90:12–18, 91:22–

10

93:1, ECF 25-3, made sexual statements towards her, see Cromwell Dep. 82:6–84:16, ECF 25-3;

Yarde Int. ¶¶ 5–6, ECF 25-6, and physically touched her, see, e.g., Cromwell Dep. 84:6–16, 96:24–

98:5, ECF 25-3.  Moreover, differing accounts of these events, see, e.g., Jones Dep. 18:9–23, ECF

20-8, present disputed material facts.

Cromwell's allegations, if proven, could provide a basis based on which a reasonable jury

could infer that Jones' conduct detrimentally affected Cromwell and would have affected a

reasonable person in similar circumstances.  While SEPTA argues Cromwell did not complain to

anyone at SEPTA and thus fails to demonstrate that she was detrimentally impacted, Mot. at 18,

ECF 20, SEPTA also seems to concede that Cromwell's report to Lyles on August 23, 2023,

complied with SEPTA's Harassment Prevention and Retaliation Policy reporting procedures,

CSUMF ¶¶ 35–37; RCSUMF ¶¶ 35–37, and that Lyles failed to escalate Cromwell's report.

### 3.      Retaliation Claim

To establish a retaliation claim, a plaintiff must first establish that "(1) she engaged in

activity protected by Title VII; (2) the employer took an adverse employment action against her;

and (3) there was a causal connection between her participation in the protected activity and the

adverse employment action."  Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).

The Court acknowledges, as raised by SEPTA, that there are concerns about causal

connection.  For example, on October 5, 2023, Cromwell filed a complaint to EEO Office about

Jones' conduct, and an investigation ensued.  SUMF ¶ 35; RSUMF ¶ 35.  However, the write up

and escalation of discipline of Cromwell by Jones all occurred before the date of the EEO

Complaint.  For those reasons, the Court does not believe that Cromwell's filing of an EEO

Complaint gives rise to a retaliation Complaint.

However, the parties dispute whether Cromwell engaged in a protected activity by verbally

complaining of purported harassment and whether this had a causal relationship to her adverse

employment actions.  As noted, while SEPTA argues Cromwell fails to demonstrate that she was detrimentally impacted, Mot. at 18, ECF 20, it also seems to concede that Cromwell's report to Lyles on August 23, 2023, complied with SEPTA's Harassment Prevention and Retaliation Policy reporting procedures, CSUMF ¶¶ 35–37; RCSUMF ¶¶ 35–37, and that Lyles failed to escalate Cromwell's report.  The parties also dispute, as discussed above, Jones' motivation for writing up Cromwell, adding additional charges, and changing her recommended discipline from written warning to discharge.  SUMF ¶ 28; RSUMF ¶ 28; CSUMF ¶ 46; RCSUMF ¶ 46.

  **B.**  **Cromwell's Motion for Leave to Amend**

  [T]he grant or denial of an opportunity to amend is within the discretion of the District Court."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), but may be denied where undue delay, bad faith, or amended would be futile, Foman, 371 U.S. at 182.  Cromwell seeks to amend her Complaint solely to add claims under the Pennsylvania Human Relations Act ("PHRA").  Mot. for Leave ¶¶ 5, 11, ECF 27.  As Cromwell notes in her Motion for Leave to Amend, the analysis of the state law claims are the same under Title VII (as analyzed above) and SEPTA does not oppose amendment.  Mot. for Leave ¶ 14, ECF 27 (citing Jones v. School Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999)).  For these reasons, Cromwell's Motion for Leave to Amend is **GRANTED**.

**V.**  **CONCLUSION**

  For the foregoing reasons, SEPTA's Motion for Summary Judgment is **GRANTED in part and DENIED in part** and Cromwell's Motion for Leave is **GRANTED**.  An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-1884 Cromwell v SEPTA\24-1884 Memorandum on Summary Judgment.docx